DECEMBER.                          NORWOOD vs. NORWOOD.

APPEAL from a decree of the Court of Chancery. The bill, filed by the complainant, *Edward Norwood*, (now Appellee,) on the 31st of July 1800, stated, that he and the defendant *Samuel Norwood*, (now Appellant,) being jointly indebted to *D. Dulany*, on the 20th of April 1784, gave to him their joint bond, conditioned for the payment of £314 sterling, and £320 current money, with interest. That the defendant having omitted to pay any part, suits were brought against each on the bond, and judgments obtained. That the complainant paid £100 1 1, current mo-

A and B, entered into a bond to C, on which separate suits were brought, and judgments recovered. B pays both judgments, and, as the surety, obtains an assignment of the judgment against A, from the attorney of C, and issued an execution in his own name as assignee of C against A, on the judgment against him, for the whole sum of money recovered. A filed a bill in chancery against B, charging that the B nd was for a joint debt due from both of them; that he had paid nearly one half of the debt, and that B was liable for the other half—also, that B was indebted to him in a sum of money recovered by a decree in chancery, which he refused to discount. Prayer for general relief, and for an injunction to stay the execution. Injunction granted. B, by his answer, denied that the debt was a joint one; that he was the surety of A in the bond. He admitted the decree obtained, but that he had appealed therefrom, which appeal was depending and undetermined. *Decreed*, that B was a co-principal with A in the bond to C, on the ground that he received, in specifies, as his share of the personal estate of his father, (for whose debt the bond was given,) as a consideration for his becoming a principal in the bond with A. That A be charged with one half of the amount of the bond, with interest, and credited with the payments by him made, and the amount of the decree since finally made in his favour, and be also charged with B's distributive share of his father's estate, with interest. By which a balance was due from A to B.—*Decreed*, that the injunction be dissolved, and that B be permitted to take out execution against A, on the judgment at law, for the said balance, with interest, &c. And that the execution be sued out in the name of C for the use of B.

ney, on the 17th of September 1788, and $1000 on the 28th May 1795. That the balance due from him on the judgment, after the deduction of the payments, amounted, with interest and costs, on the 29th of July 1800, to £321 5 10. That the defendant, contriving to injure and oppress the complainant, obtained an assignment of the whole judgment against the complainant, and issued an execution thereon in his own name, as assignee, and threatens to levy the whole amount of the judgment, although the defendant is himself liable for one half. That the defendant is indebted to the complainant in £776 15 6 current money, exclusive of interest and costs, recovered by the latter of the former by a decree of the court of chancery. That the defendant refuses to discount out of the judgment any part of the money due to the complainant. *Prayer* for general relief, and an injunction. Injunction granted, &c. The *answer* of the defendant stated, that on the 20th of April 1784, at the pressing solicitation of the complainant, he became his security to *D. Dulany*, in the bond stated in the bill, and which bond was given to renew a former bond of the complainant to *Dulany*, for the sole and proper debt of the complainant, contracted about the year 1772. That the defendant neither directly nor indirectly received or participated in the benefit of any part of the consideration of the said debt, and that he signed and executed the bond as the security of the complainant, and he positively denies the allegation of the complainant, that the same was for a joint debt, or that the defendant ever received full or any satisfaction for the same. He admits the payments stated by the complainant, and the institution of the suits, and recovery of judgments on the bond, and that he the defendant hath obtained, as the surety of the complainant, an assignment of the judgment recovered against the complainant, as was lawful and just for him to do, and he claims and insists, that he, as surety of the complainant, hath a legal, just, and equitable title, to proceed to recover the balance thereon due. He admits that the complainant hath obtained a decree in the court of chancery against him for the sum stated, but he insists that the complainant cannot justly claim any discount for or by reason of that decree, which is unjust, and upon which he hath prosecuted an appeal to the court of appeals, and where he confidently expects a reversal of the decree. He denies all fraud, &c.

The defendant gave notice of a motion to dissolve the injunction at the next term.

Hanson, Chancellor, at the next term, on the motion to dissolve, passed an order continuing the injunction.

There was much testimony taken, and it was the object of the complainant to prove that he had paid to the defendant more than his proportion of his father's estate, whose executor the complainant was, and that the debt due to Dulany was from the estate of the father; and that the bond was executed by them as joint obligors, each to pay one half. The judgments obtained by the executrix of Dulany against E. and S. Norwood, (the payments made being deducted,) in consideration of the principal sum of money, and interest due thereon, being paid by S. Norwood, all the right, &c. of the plaintiff to the judgments, was assigned unto S. Norwood on the 24th of July 1800; by William Cooke, Esquire, attorney for the executrix of Dulany; and in virtue of that assignment, a writ of fieri facias issued on the judgment against E. Norwood, in the name of S. Norwood, as the assignee of the executrix of Dulany, returnable to the general court at October term 1800.

Hanson, Chancellor, (June term 1803,) passed the following interlocutory decree: The case is that of one of two obligors in a bond obtaining an assignment of the judgment on the bond, and endeavouring to avail himself of it as a mere security; whether or not he was such, is the main, if not the only question in dispute. As it does not appear from the face of the bond that the assignee was only a security, his answer to the bill is not to be considered as standing good if it be contrary to the testimony of at least two witnesses, or of one witness, and strong equitable circumstances. Whether or not he was a mere surety must then be determined from the testimony.

The chancellor must declare that the testimony is by no means such as to convince him that S. Norwood joined in the bond with E. Norwood as a mere security. But supposing he did, and that no part of the consideration was by him received from Dulany, the obligee, if he received a consideration from E. Norwood for joining in the bond, he is surely to be charged with it.

Upon the whole, the chancellor conceives himself obliged to decree; and it is, &c. decreed, that the parties account with each other before the auditor; and that the auditor of this court state and return the account to this court, charging *E. Norwood* with one half of the bond to *Dulany*, in the bill and answer mentioned, and giving him credits for payments appearing to have been by him made, charging interest on the principles in this court established, and striking the balance.

But still the chancellor is by no means satisfied with respect to the merits of the cause. It appears that *S. Norwood* received upwards of £269 in specifics, as his share of the personal estate of the father, when a far less sum was due to him; and it is probable that the said sum was the consideration for his joining *E. Norwood* in the bond to *Dulany*. The case is wonderfully perplexed and confused, probably from the want of keeping regular accounts. If that sum *was* the consideration, and if, after deducting *S. Norwood's* share of the personal estate, it was inferior to the one half of the bond to *Dulany*, surely *S. Norwood* is entitled to credit for the deficiency. Let then the auditor state an account in a different way, charging *E. Norwood* with the whole of the bond to *Dulany*, giving him credit for payments, and likewise for the delivery of the specifics to *S. Norwood*, deducting *S. Norwood's* share of the personal estate. The account, when returned, shall be subject to the opinion of the chancellor, on exceptions, &c.

The truth is, that in the present state of affairs the chancellor does not feel himself competent to pass a final decree to satisfy himself. He knows not whether in the account in another cause between the parties, *E. Norwood* hath not had credit for the said sum. Let the auditor examine the former account. If already *E. Norwood* has received a credit for the said sum, probably he ought to be charged with the whole of the bond to *Dulany*. However, the whole is open to examination and controversy.

The Auditor having reported, and both parties having excepted to some one of the accounts stated,

Hanson, Chancellor, (July 25, 1804.) After hearing the exceptions of the parties, and the ingenious arguments of counsel relative to the statements of the auditor made under the decree of the 3d of August last, the chancellor

has bestowed the most anxious attention to, and has long deliberated on a cause; than which he never attended to one more perplexed and difficult. The testimony is very far from being satisfactory, and yet it appears unquestionably entitled to some weight.

Upon the whole, the chancellor conceives it best to consider the complainant as the sole principal in the bond to *Dulany*, (the evidence in the cause showing that it was given on account of bonds by him passed without the defendant,) and to charge the defendant with £269 6 4, twelve months after the day of the date of the probate of the last will of *E. Norwood*, deceased. It is accordingly ordered, that the auditor state another account differing substantially from account No. 2; by him endorsed and filed, &c.

And, on the 27th July 1804, it was further decreed, that the *injunction* should be dissolved, provided that no more be considered due or levied by *S. Norwood*, by his execution on the judgment at law assigned to him, than the costs at law, and the sum of £278 9 0, with interest, &c. But whereas *E. Norwood*, by his petition this day, hath stated on oath, what is true to the chancellor's knowledge, that he hath a decree against *S. Norwood* for a sum which, with the lawful interest, is superior to the aggregate sum of £303 11 6, due to *S. Norwood* from *E. Norwood*, it is, conformably to the petition, adjudged, &c. that *S. Norwood* be further enjoined not to proceed on his execution at law until the further order of the chancellor, it being reasonable that there be a discount between the parties. From which decree the defendant appealed to this court.

The cause was argued before CHASE, Ch. J. TILGHMAN, BUCHANAN, NICHOLSON, and GANTT, J.

*Johnson*, (Attorney General,) *T. Buchanan*, and *Harper*, for the Appellant, contended, that the complainant was tied up to the relief prayed for in his bill, and that the general prayer for relief related only to that asked on the facts disclosed in the bill. That the *allegata* and *probata* must agree. That a discount of the amount of the decree obtained by the complainant against the defendant, ought not to have been allowed by the chancellor, as it was not claimed as a ground of relief by the bill. That there was no allegation in the bill, of the informality of the assignment to the defendant of *Dulany's* judgment,

and the defendant's right to claim under it was not denied by the bill.

*Key*, for the Appellee, contended, 1. That the appellant had no legal assignment of *Dulany's* judgment against the appellee, to enable him to issue execution thereon in *his own name*. 2. That the appellant was a joint principal with the appellee, in the bond to *Dulany*, for a valuable consideration paid to him; and being a joint principal, was not entitled to an assignment of the judgment against the appellee, so as to issue execution thereon. 3. That the amount of the decree by the chancellor, as well as the other sums, supposing the appellant not a co-principal, are properly discountable with any other sums he might owe to the appellee. He referred to the act of 1763, *ch*. 23, and insisted that the appellant must prove, 1st. That he was a surety; and 2d. That he has a regular and legal assignment. That the assignment was made by the *attorney*, and not by the principal creditor or plaintiff in the judgment, as required by the act of 1763; and that the execution, issued in the name of the appellant, as assignee, of the plaintiff, in the judgment, was not justified by the act under an assignment made by the attorney of the plaintiff, and in which it was not stated that the appellant was the surety.

CHASE, Ch. J. *(a)*. The court are of opinion, that the decree of the court of chancery be reversed, with costs to the appellant, and that the injunction be dissolved. That the clerk of this court state an account between the parties. The court are of opinion, that the appellant was co-principal and joint debtor in the bond with the appellee to *Dulany*, on the ground that the specifics, to the amount of £269 6 4, were delivered and paid to the appellant by the appellee, as a consideration for the appellant's becoming a principal with the appellee in that bond. Therefore charge the appellee with one half of the bond, &c. &c.

By the statement made, as directed by the court, a balance remained due to the appellant, (after giving the appellee credit for the payments he had made on the judgment, and the amount of the decree by him obtained against the appellant on the 22d of February 1803, and charging him with the appellant's distributive share of his father's

(a) *Tilghman* and *Gantt*, J. concurred.

estate, with interest, &c.) of £318 12 5, current money. The court therefore *decreed*, that the appellant be permitted to take out execution against the appellee on the judgment, &c. for the sum of £318 12 5, current money, with interest from the 19th of January 1808, and the costs at law; and that the execution be sued out in the name of *Rebecca Dulany*, as executrix of *Daniel*, for the use of the appellant.     DECREE REVERSED, &c.