Tomlinson et al. *vs.* McKaig et al.—1847.

From this decree the complainant appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, SPENCE, MAGRUDER and MARTIN, J.

By J. J. SPEED for the appellant, and

By J. M. BUCHANAN for the appellee.

BY THE COURT:

Decree affirmed for the reasons assigned by the Chancellor in his opinion.

DECREE AFFIRMED.

---

MARY TOMLINSON ET AL. *vs.* THOMAS J. McKAIG, GUS-TAVUS BEALL AND WIFE, ET AL.—*December,* 1847.

By decree of a county court as a court of equity, passed in 1836, certain lands belonging to infants and others were ordered to be sold. The trustee appointed to sell the same, reported a sale, which was finally ratified. The purchaser by his last will devised the lands to the complainants, who, in 1839, filed their bill in the same court to procure a conveyance from the trustee. The decree thus sought to be carried out was not appealed from and remained unreversed. In the consideration of that decree, *Held,*

1. That if the bill filed in the cause in which that decree was passed, was founded on the act of 1785, ch. 72, the jurisdiction of the court could not be sustained, because there was no allegation in the bill that it would be for the interest and advantage of the infants, and of the other persons concerned, that the lands described in the bill should be sold.

2. Under the act of 1820, ch. 191, sec. 8, if the parties entitled to an intestate's estate cannot agree upon the division thereof, or in case any person entitled to any part be a minor, an application should be made to the county court of the county where the estate lies, whose course of procedure is there prescribed, to sell the land, and distribute the proceeds.

3. The jurisdiction of the court under the act of 1820, ch. 191, depends upon the allegations that the party died intestate of such an estate as is described in the act; that the parties entitled to such intestate's estate cannot agree upon a division; or that some of the parties are minors.

4. A formal application in such cases may be made by bill to the county court as a court of equity.

5. Under the prayer for general relief, the complainants are entitled to such action of the court, and decree, as the case made in the bill would by law entitle them to.

6. As relates to the question of jurisdiction, no prayer for a partition or appointment of commissioners to divide and value was necessary.

7. Where the case made by the bill is within the jurisdiction of the court, neither the inappropriate averment that the land was incapable of division, nor a prayer for the appointment of a trustee to sell, would affect that question.

Where the bill made a case under the act of 1820, ch. 191, sec. 8, the court should pursue the provisions pointed out by that act, or it is error of procedure, but does not affect the jurisdiction of the court.

It is the allegations in a bill which confer jurisdiction, and determine the power of the court.

A course of procedure adopted by a court subsequent to the filing of a bill, decree without or upon insufficient proof, is error in the exercise of jurisdiction, but do not indicate a want of it.

The true test of jurisdiction will in all cases be found in the determination of the question, whether a demurrer will not lie to a bill.

Before the ratification of a sale in equity, all objections to it are open for consideration, and the sale will be set aside upon proof of error, mistake, misunderstanding, or misrepresentation as to the terms or manner of the sale. It must appear to be in all respects fair and proper, or it cannot receive the sanction of the court.

After the sale has been confirmed, and after the term has passed, and the proceedings are considered as enrolled, the court possesses no power to annul the same, except by bill of review for error apparent on the face of the decree, or by an original bill to annul the same for fraud.

Where bills are necessary to be filed to carry decrees into execution, the law of the decree is not examinable, and will be enforced, unless delayed or stayed for re-hearing of the former case, if not enrolled; or if enrolled, for a bill of review.

Upon a bill filed by the devisees of a purchaser, under a decree to sell real estate, to compel the trustee to make a conveyance, who refused to convey after ratification of sale and enrolment of the decree, it is error in the court to adjudge the decree erroneous and invalid, when it was within the jurisdiction of the court.

Where a bill was filed against infant defendants and others, under the act of 1820, ch. 191, to sell an intestate's real estate, upon the ground that the parties entitled could not agree upon a division thereof, and the land was ordered to be sold *irrespective of the directions of that act*, it is competent for the defendants to question the regularity or validity of the decree, either by a bill of review, or by an original bill for fraud.

So where a bill was filed to enforce a purchase under *such a decree*, and the defendants in the first proceeding contested the right of the complainants in the second to the purchase made by them, it is the duty of a court of equity to

stay the execution of the first decree, until an opportunity might be afforded the defendants, within which they should be at liberty to file an original bill to set aside the decree for fraud, and to the infants, within which they might file a bill of review, to vacate the decree for errors apparent on its face, to effect which objects the cause was remanded after a reversal of a decree dismissing the bill in this cause.

Where the courts are authorized to sell real estate upon the application of parties under certain circumstances, by act of Assembly, and the act points out the various steps to be taken after filing the bill, as the appointment of commissioners, the procurement of their judgment upon the practicability of dividing the land, their valuation of it, and securing to the heirs-at-law in succession, the right of electing to take the estate at the valuation, the absence of such steps in the cause would, in *England,* be the subject matter of a bill of review where the decree recites the proceedings in the cause.

But here where the English practice of reciting the proceedings in the decree does not prevail, the proceedings themselves are the subject matter of revision in a bill of review, to the same extent, and in the same manner, as if they were stated on the face of the decree, in conformity to the *English* practice.

APPEAL from the equity side of *Alleghany* County Court.

The bill in this cause was filed on the 25th July, 1839, by the devisees of *Benjamin Tomlinson,* deceased, against *Gustavus Beall* and wife, and other heirs-at-law of the said *Benjamin;* and *Thomas J. McKaig.* It alleged in substance, that upon a bill theretofore filed in *Alleghany* county court by the said *Beall* and wife, against *Sampson Thistle* and others, some of whom were infants, at April term, 1836, a decree was passed for the sale of all the real estate of which *Jesse Tomlinson of Benjamin* died seized, or to which he was in any wise entitled. That *McKaig* was appointed trustee to make the sale, which was made to *Benjamin Tomlinson* for $750, and duly ratified at October term, 1836. That the proceeds of sales were audited and distributed under orders of the court. That *Benjamin,* the purchaser, who resided on the land, died after the ratification of his purchase, before obtaining a deed, having devised his purchase to the complainants, to whom the trustee refused to make a conveyance, according to the terms of *Benjamin's* will, alleging that inasmuch as there was difference of opinion between the heirs of *B.* as to the construction of his will, and as to his heirs who were entitled

to the land, he prefered to occupy a neutral ground, and do nothing without the orders of the court in the premises. The bill also alleged the payment of the purchase money by *B.*, a willingness to pay any residue if any was due, and a fraudulent combination among the defendants to deprive the complainants of their devise under *B's* will. That the said *Gustavus Beall*, who is the author of most of the dissatisfaction which has been expressed, was one of the petitioners for the decree to sell the said lands; that he was active in getting the petition filed, and in conducting the proceedings to a decree; that he attended at the trustee's sale, and it is believed acted for the said *Benjamin Tomlinson*, deceased, in bidding in the said land for the said *Benjamin*, &c. That the sole object of getting the aforesaid decree to sell said lands, as understood in the family and amongst the heirs, &c. of the said *Benjamin*, was to enable the said *Benjamin* to get back the title to said lands in himself, (the said *Benjamin* having previously conveyed them to the said *Jesse*) in order that he, the said *Benjamin*, might devise the same by last will and testament, and that for this reason there was little or no competition at said trustee's sale, and that the sum bid was pretty much a matter of form, with a view to make good the purchase, &c. That if the whole purchase money was not paid (which your orators and oratrixes do not admit) by the said *Benjamin* in his lifetime, it was altogether owing to the main object and purpose for which the decree to sell was sought, it not being so much with a view to divide the proceeds of sale amongst the heirs of said *Jesse*, who are the children and heirs of the said *Benjamin*, as to reinvest the title to the lands in the said *Benjamin*, in order that he might dispose of them to his said children as he thought proper. That most of those entitled to the proceeds were indifferent about receiving any portion thereof, and your orators and oratrixes therefore allege, that under the circumstances the whole purchase money was in effect paid. But in order that there might not be even the shadow of foundation for any such pretences and allegations on the part of the said *Beall* or any other person, your orators and oratrixes

further allege and charge to be true, that they have tendered to the said trustee the balance of the purchase money pretended to be due and unpaid, and that the said trustee refused to receive the same. The heirs-at-law of *Jesse Tomlinson* were the children and heirs of *Benjamin,* some of whom were infants and parties to both bills. The object of the present bill was to procure a conveyance from the trustee, *McKaig,* and the heirs of *B.,* who took no interest in the land under his will, and against them *subpœna* and relief were prayed.

With the bill a variety of documentary evidence was filed.

The proceedings in *Alleghany* county court upon the bill of *G. Beall and wife, Mary Tomlinson* and *Drucilla Baker* against *S. Thistle and wife, Jonas Beason and wife, Thomas, Mary Ann, Lavinia, Elizabeth* and *Samuel Collins,* and *Philip* and *Alexander Wingart,* showed that *Jesse Tomlinson* " died seized in fee, or entitled to an equitable interest or reversion in and to a large real estate in *Alleghany* county, to which the complainants and defendants in the cause were entitled as heirs-at-law." That the said real estate would not admit of division amongst the parties entitled to the same, without great loss and injury to the heirs-at-law. That the *Collinses* and *Wingarts* were infants. Prayer for a sale and *subpœna.*

The infants, except *Thomas* a non-resident, answered the bill by guardian appointed under a commission from the court, admitted its facts, and consented to a decree as prayed.

The answer of *Beason and wife* also admitted the facts charged, and consented to a sale; and as to the absent defendants, the bill was taken *pro confesso* after publication, and a decree was passed for a sale on the 30th April, 1836, after proof of the heirship of the parties, and that the land was not susceptible of division amongst the heirs without loss.

The trustee, *T. J. McKaig,* reported a sale of *"Rural Felicity,"* 266 acres, *"Rockland,"* 46 acres, *"Stoney Ridge,"* 51½ acres, *"Poplar Hollow,"* 78 acres, *"Millstone and Coal,"* 28½ acres, for the sum of $750, to *Benjamin Tomlinson* the highest bidder, which was finally ratified on the 18th October,

1836. The distribution of the proceeds of sale was also finally ratified on the 19th October, 1836.

At October term, 1840, the complainants amended their bill and introduced as a part of their case, a deed from *Benjamin Tomlinson* to his son *Jesse*, of the 1st March, 1828, in consideration of natural love and affection, also the better preferment of him the said *Jesse, also for the payment of the charges thereinafter specified*, and upon the condition and terms thereto annexed, conveying a tract of land called *Rural Felicity*, 266 acres, in fee, provided that he the said *Jesse*, his heirs and assigns would permit the said *B.* to enjoy the said tract during his natural life, which right the said *B.* had reserved for his support and maintenance, and that he the said *Jesse*, should pay to *Rebecca Beason* $400, *Susanna Thistle* $100, *Mary Tomlinson* $150, at the expiration of five years, to be laid out in the education of *Lavinia Collins.* These sums were charged upon the said lands until paid, as well in the hands of the said *Jesse* as in the hands of his heirs.

By another deed of the same date with the former, between the said parties, in consideration of love and affection, and for the better preferment of the said *Jesse*, and in consideration of one dollar the said *B.* conveyed to him in fee, *"Rockland"* and *"Stoney Ridge."*

The charges of the amended bill in relation to these deeds, will sufficiently appear in the answer of *Beall and wife.*

The answer of *G. Beall and wife* to the amended bill admitted that the said *B. T.* did on the 1st March, 1828, execute a deed to the said *Jesse Tomlinson* for the tract called *"Rural Felicity,"* for the considerations and upon the terms therein expressed; that the said *B. T.* did on the said 1st March, 1828, execute a deed to the said *Jesse Tomlinson*, for the tracts *"Rockland"* and *"Stoney Ridge,"* for the consideration therein expressed. But these defendants deny that the said deeds or either of them are mere deeds in form, but in "substance a will" as alleged, or that it was ever the intention of the said *Benjamin Tomlinson*, either at the time the said deeds were executed, or at any time before his death, that the said

deeds should be considered as a will, or as a testamentary dis-
tribution of the property as is alleged in the complainants' said
amended bill.   On the contrary, these defendants know from
personal conversations with the said *B. T.* about the time the·
said deeds were executed, and they here aver the truth of the
same, that the said *Benjamin Tomlinson* frequently said in the
presence and hearing of these defendants, that he always
intended that the said *Jesse*, his son, should have and receive
the said tracts of land called "*Rural Felicity*," "*Rockland*" and
"*Stoney Ridge*," specified in said deeds, and also all that part
of the lands or real estate of the said *Benjamin*, which lay in
the State of *Pennsylvania*, adjoining the said tract called "*Rural
Felicity*," upon the terms and conditions so far as related to
the said tract called "*Rural Felicity*," which are specified in
the deed; and that the execution of the said deeds was but
the fulfilment of his expressed intention of conveying the title
and the interest in the said three tracts of land to the said *J.
T.*, and to his heirs and assigns in fee forever, upon the condi-
tions and with the reservations expressed in said deed; and
that the execution and delivery of the said deeds to the said
*Jesse*, his son, at the particular time they were executed and
delivered, was for the further purpose of vesting the title and
permanent interest in the said *Jesse*, to enable him to become a
more responsible and sufficient security for this defendant, *Gus-
tavus Beall*, in the loan of money which he was about to
obtain, and did obtain from the Commissioners of *Alleghany*
county.

These defendants further answering state, that they did in
their answer to the complainants' original bill, and they do now
here again deny that the said *Benjamin Tomlinson* purchased
in the title of the said *Jesse* to the said lands at the trustee's
sale, at the instance of this defendant, *Gustavus Beall*, or with
the approbation of the rest of the family, or that the said pur-
chase was made as a family arrangement, as alleged in the com-
plainants' said amended bill, except in the manner and upon the
understanding and terms specified in the answer of the defen-
dants to the original bill, to which they refer this Honorable

court. And they aver that it is not true, that the said *Benjamin Tomlinson* intended to purchase the said lands so sold by the said trustee at the time the bill was filed, to procure a decree to have the same sold, and that it never was the intention of the said *Benjamin* to make such a distribution of the said lands by his last will as was therein made, until he was to do so, whilst in the agonies of his last sickness, by the machinations and undue influence of some of the said complainants.

The answers of *Philip* and *Alexander Wingart*, infants, defendants, relied upon their infancy, prayed the protection of the court and relief according to their rights. They insisted upon the validity of deeds of 1828, from *B.* to *J.*, and the inability of the court to consider them as testamentary papers; that the original decree of 1835, and proceeding under it, are void, and cannot divest their title as heirs-at-law, because it was not stated in the original bill that it would be for the interest and advantage both of the said infants and of the other person concerned, that the said land should be sold, nor is there any statement in said bill of such fact as is required by the act of 1785, ch. 72, sec. 12, to give the court power to decree a sale of said land of these defendants; and that if any of such statements had been made, it would have been untrue in point of fact. That the land was sold to *B. T.* at a sum grossly inadequate to its value, and with and under such circumstances, that it would be a fraud on their rights to decree a conveyance to the said complainants; that the trustee was induced to sell at the low price he did sell for by the misrepresentations of the said *B. T.;* that it was sold in pursuance of a family arrangement, and that the land was worth ten thousand dollars; that these defendants have not received any part of the proceeds of sales, and pray that the sale by *McKaig* may be set aside, &c.

The answer of *Thomas J. McKaig*, the trustee, alleged that on the day of sale, at the request of *B. T.* deceased, who became the highest bidder and purchaser, he offered all the real estate of the said *Jesse* mentioned in the report of sale together. This respondent was induced to do so, because he

understood that the sale was made rather as a family arrangement to gratify *B. T.*, than for the purpose of realizing the value of the property. When the property was offered, *B. T.* bid five hundred dollars, and no person seemed disposed to bid against him, as it was understood *Mr. Tomlinson* wished to purchase the property. This respondent was unwilling that the property should be sold at that price, being merely nominal, and requested *Gustavus Beall*, one of the complainants in said cause, and defendant in this, so to inform *Mr. Tomlinson*, and to state to *Mr. Tomlinson* that this respondent did not believe the court would ratify the sale, unless the property was sold for something like its value.

This respondent does not now recollect whether there was any bid made by any other person than *Mr. Tomlinson*, but after *Mr. Tomlinson* was informed that this respondent was unwilling to sell the property at five hundred dollars, he bid seven hundred and fifty dollars, and the property was sold to him at that price. Owing to the high respectability of *Benjamin Tomlinson*, and the representation made to this respondent by *B. T.* and *G. B.*, the only persons interested with whom he had any conversation of the object of the sale, this respondent was induecd to let the property be sold at that price. If this respondent had refused to have sold the property at seven hundred and fifty dollars, as he certainly would have done under any other circumstances, it would have been said by *Mr. Tomlinson* and others, that the object of the trustee was only to increase the amount of his commissions. This respondent might, it is true, have required *Mr. Tomlinson* to have bid a sum equal to the value of the property sold, or refused to sell; but this respondent believes few persons at that time would have given him credit for anything more than guarding his own interest or swelling the amount of his own commissions, as *Mr. Tomlinson* told this respondent at the time of the sale he would procure releases from all those interested. This respondent believes that *Gustavus Beall* at the time or previous to the sale, requested that the tract of land called "*Millstone and Coal*," lying on *Jennings' Run*, should

be sold separately, but *Mr. Tomlinson* asked to have it all set up together, to which this respondent assented. *B. T.* never executed his bond or bonds to this respondent for the purchase money according to the terms of the decree, nor did he ever pay any money to this respondent on account of said sale, except the commissions and costs which he paid through *Gustavus Beall*. This respondent called upon *G. B.* who at that time transacted the most of *Mr. T.'s* financial concerns, and desired him to obtain from *Mr. T.* his bonds for the purchase money, but this respondent was informed by *Mr. Beall* that *Mr. T.* intended to get the receipts or releases of the heirs for the amount audited to each as soon as that amount was ascertained. This respondent therefore proceeded to have the sale ratified, as the proceedings in said cause will show, and after the audit was made and ratified this respondent called upon *Mr. T.* to furnish him with the releases according to his promise. In 1837, *Mr. Tomlinson* procured this respondent the releases filed in the cause, to wit, the releases of *Jonas Beeson* and wife, *Sampson Thistle* and wife, *Cincinnatus J. Neall* and wife, and *Thomas Collins*, and with none other. Not having furnished the releases or receipts of those entitled to a distributive share of said estate, nor paid any part of the purchase money, except commissions and costs in his lifetime, this respondent did not execute a deed for said property to the said *B. T.* This respondent cannot say whether he was informed that the heirs would execute releases, or whether the releases or the receipts filed were obtained with or without the payment of the money by *Mr. Tomlinson*, as he was not present at their execution; but after the death of *Mr. Tomlinson*, *Mary Tomlinson*, one of the complainants, through *Andrew Bruce*, deceased, then one of the executors of *Benjamin Tomlinson*, notified this respondent that she would not release or give a receipt unless the money was paid to her, and that she would look to this respondent for the amount audited to her, but she is the only heir who has given this respondent that notice, or who has made any demand on this respondent for any part of the purchase money distributed by the auditor's

34    v.5

report in the cause filed.    By agreement, being exhibit "F" of complainants, the money by said report due the remaining heirs whose receipts have not been filed, is considered as tendered to this respondent by *Samuel M. Semmes*, attorney for complainants, and a deed was demanded as alleged in the complainants' bill of complaint.    This respondent being of the opinion he had no authority under the decree aforesaid to execute a deed to the devisees under the will of the said *B. T.*, and to the uses in said will contained, with remainder over to the right heirs of *Samuel Tomlinson Collins*, as was required of this respondent, and that a deed thus executed by this respondent without the further order or decree of this court, would be inoperative and void, refused to execute the said deed to the complainants ; but upon receiving the purchase money yet due, or the releases or receipts of those entitled to distributive shares under said report, this respondent as trustee aforesaid is prepared to execute any deed this court may direct, or to obey and carry out any other or further decree which this court may make in the premises.

The other answers are not considered material by the reporter.

There was proof that *Rural Felicity* was worth from $6,000 to $10,000, of the value of the improvements on it, and absence of all competition at the sale, where it was understood *Mr. B. T.* desired to repossess himself of the property.

At October term 1845, the *Alleghany* court (MARTIN, C. J.) delivered the following opinion and decree.

It appears in this case, that *Jesse Tomlinson* of *Alleghany* county died in July, 1835, seized in fee simple of certain real estate, and leaving as his heirs-at-law *Rachel Beall*, the wife of *Gustavus Beall*, *Mary Tomlinson*, *Drucilla Baker*, *Susanna Thistle*, the wife of *Sampson Thistle*, *Rebecca Beeson*, the wife of *Jonas Beeson*, *Thomas*, *Mary Ann*, *Lavinia*, *Elizabeth* and *Samuel Collins*, and *Philip* and *Alexander Wingart*, the infant children of two of his deceased sisters.

Three of the tracts of land that constituted the real estate to which *Jesse Tomlinson* was entitled at the time of his death,

had been acquired by him from his father, *Benjamin Tomlinson*, by the deeds of the 1st March, 1828, the remaining tracts in some other mode.

On the 11th September, 1835, *Gustavus Beall* and his wife filed their bill in *Alleghany* county court as a court of equity, against the other heirs-at-law of *Jesse Tomlinson*, among whom were the infant children of his sisters, *Mrs. Collins* and *Wingart*, praying that the court might order a sale of the real estate of the said *Tomlinson*, on the ground "that it would not admit of division amongst the parties entitled to the same, without loss and injury to the aforesaid heirs-at-law." The bill states, "that *Thomas, Mary Ann, Elizabeth* and *Samuel Collins*, and *Philip* and *Alexander Wingart* are infants, under the age of twenty-one years." And prays "that a trustee may be appointed by a decree of the court to sell the said real estate, and that the money arising from the sale may be distributed among those entitled to it by law, under the direction of the court."

On the 30th April, 1836, a decree was passed by the court appointing *Thomas J. McKaig*, Esq., trustee, and directing a sale of the estate in conformity with the prayer of the bill.

In May, 1836, the property was sold by the trustee to *Benjamin Tomlinson*, the father or grandfather of the parties interested in its proceeds, as the highest bidder, for the sum of $750, and the report of the trustee after the usual order *nisi*, was finally ratified at the October term of the court, 1836.

On the 26th September, 1838, *Benjamin Tomlinson* a few days previous to his death, made his will and devised the estate which he had purchased from the trustee, and which he had conveyed to *Jesse Tomlinson*, to his daughter *Mary* for life, with remainder in fee to his grandson, *Samuel Collins*, and the rest of his estate by a residuary clause, to be distributed among his legal heirs.

On the 25th July, 1839, the bill which is now the subject of examination was filed by the devisees of *Benjamin Tomlinson*, against all the heirs-at-law of *Jesse*, who were not complainants, in which they aver their readiness to pay to the trustee or

bring into court so much of the purchase money as may not have been paid by *Benjamin Tomlinson*, and having incorporated into the bill the decree and proceedings under which the sale of the estate of *Jesse* was made, pray that the trustee may be ordered to convey the property thus sold by him in conformity with the provisions of the will of *Benjamin*.

It will be perceived that the decree of the 30th April, 1836, in virtue of which this sale was made, was a proceeding under the 12th sec. of the act of Assembly, 1785, ch. 72. It provides "that in case any infant have a joint interest in common with any other person or persons in equal or unequal proportions in any lands, and it shall appear to the Chancellor upon the application of any of the parties concerned, and upon appearance of the infant and hearing and examination of all the circumstances, that it will be for the interest and advantage both of the infant and of the other person or persons concerned, to sell such lands or any part thereof, the Chancellor may order and direct such lands to be sold upon such terms as the Chancellor shall direct, always taking care that a just proportion of the money arising from such sale be well and sufficiently secured to be paid to such infant."

The right of the Chancery court to direct the sale of an estate to which infants are entitled, is a statutory grant of power, and can only be exercised where it shall have been made to appear to the Chancellor that such sale will be for the interest and advantage of the infant, and other persons concerned; and I think it a fatal objection to the validity of the decree under which this sale was made, that the bill did not on its face, show a case wherein the jurisdiction and power of the county court, as a court of equity, existed.

It is a fundamental rule of universal application, that the bill must by direct and precise averments present a case within the appropriate jurisdiction of the court. The Chancellor must look to the bill for his jurisdiction, and if on inspection he does not find it there, he has no power to decree. His jurisdiction stands upon the pleadings, and therefore a fact though proved, will not obviate the necessity of making in the bill

those averments upon which the jurisdiction of the court depends.

In *Shriver vs. Lynn*, 2 *How.* 58, the court held, that the decree of the Chancellor could not be impeached in a collateral suit, because he had jurisdiction as presented by the petition.

In *Grignon* against *Astor*, 2 *How.* 338, the same court declared "That if the petitioner presents such a case in his petition that—on a demurrer the court would render a judgment in his favor—it is an undoubted case of jurisdiction." The converse of this rule must be true. And if the bill presents such a case, that on a demurrer the judgment would be against the complainant, it is conclusive upon the question of jurisdiction.

In the case of *Griffith* against *The Frederick County Bank*, the Court of Appeals say—"the Chancellor has no jurisdiction under the act of 1785, ch. 72, to decree a sale of the real estate, except upon the condition therein mentioned. And this court have said : that the exercise of such a jurisdiction must be warranted both by the pleadings and the proof, or the decree cannot be sustained." Does then the original bill of the 11th of September, 1835, present on its face, a case in which the court had jurisdiction or power to direct the sale of an estate where infants were concerned, according to the provisions of the 12th sec. of the act of 1785, ch. 72?

It is clear that it does not. The bill only alleges, that the estate will not admit of division without great loss to the heirs at law, and therefore asks for a sale of it. But it is manifest that the court had no power to decree a sale of the real estate, except upon the conditions mentioned in 12th section of the act of 1785, ch. 72. That is, upon its appearing to the court, after hearing and examination, not that the estate would not admit of division, but that a sale of it "would be for the interest and advantage of the infants, and other persons concerned." I think it perfectly clear, that on a demurrer to this bill, it must have been sustained, and the bill dismissed, on the ground that it did not present a case of jurisdiction.

Another objection equally fatal to the power of the court to

pass their decree for the sale of the lands in question, is, that no proof was taken that such a sale as was prayed for by the bill would be for the interest and advantage of the infants. A commission was issued, and testimony taken under it, but the evidence was directed only to the point, that the estate would not admit of division. That the Chancery court has no power to decree a sale of real estate in which infants are interested, unless some evidence is taken, calculated to show, that the interest of the infants would be promoted by such sale, under the provisions of the statute under which the court acted in this case, was directly decided by the Court of Appeals, in the case of *Harris* against *Harris*, 6 *G. and J.* 114. They say: " we see no ground for reversing the decree of the Chancellor in this case. If required to pass a final decree therein, he could not have done otherwise than dismiss the complainant's bill."

The only evidence that a sale of the lands in question would have been for the benefit and advantage both of the infants and other person or persons concerned, (which, without being made to appear to him, he possessed no power to decree a sale,) was the admission in the answer of the infant defendants: such admission is not binding upon these infants. And before the Chancellor could pass the decree prayed for, he must be satisfied of the truth of the material. allegations in the bill; that is, that a sale of the estate would be for the advantage of the infants, by other means than the answer of the infants.

It has, however, been maintained by the counsel for the complainants, that although this decree may have been reversed by some direct proceeding, either in the same court to vacate it, or in the appellate court; yet the time having passed within which an appeal could be taken from the decree, or a bill of review filed to reverse it, it is to be held as practically conclusive.

It is true that a bill of review for errors apparent upon the face of the record will not lie, after the time when a writ of error or appeal could be taken; for although bills of review are not strictly within the statute of limitations, courts of equity govern themselves in this respect, in analogy to the proceeding adopted in the common law courts. Therefore it has been

determined by the Supreme Court, in analogy to the provisions of the judiciary act concerning appeals, that a bill of review cannot be filed after five years. *Thomas* against *Harbie,* 10 *Wheat.* 146.

The Court of Appeals have decided that a bill of review will not lie after nine months, that being the time fixed by the act of Assembly, limiting appeals from decrees and orders of the Court of Chancery. But they say, when the party interested labors under the disability of coverture, a bill of review may be filed within nine months after the disability is removed. *Berrett* against *Oliver,* 7 *G. & J.* 207. And in *England,* where twenty years have elapsed from the time of pronouncing the decree, the court will not permit a bill of review to be brought. *Smith* against *Clay,* 3 *Bro. C. C.* 633, in note. But it is well settled that time shall not be objected as a bar to a bill of review, against any person under the disabilities specified in the statute of limitations: and therefore in *England,* the court allowed an infant, after twenty years had elapsed, to exhibit a bill of review, and reversed a decree which was to the prejudice of his interests. *Coop. Eq. P. C.* 93.

A case strikingly similar in many of its features to the one now under consideration, was decided by the Supreme Court, at the January term, 1834. *Bank of the United States* against *Ritchie,* 8 *Pet.* 128.

*The Bank of the United States* filed their bill against the infant heirs of *Abner Ritchie,* a debtor of the bank, for the purpose of selling his real estate, on the ground of insufficiency of the personal estate, under the *Maryland Statute of* 1785, *ch.* 72. An answer was filed by the guardian *ad litem* of the infants, in which the justice of the claims, and the insufficiency of the personal estate, were admitted: but those facts were not established, otherwise than by the answer of the guardian. On the 21st of June, 1826, a decree was passed by the court, directing the sale of the real estate of *Abner Ritchie,* for the purpose of paying the debt of the complainants, and a trustee appointed. A sale of the estate was accordingly made by the trustee, and a deed executed to the purchaser. In 1828, some

of the infant heirs of *Abner Ritchie,* filed their bill of review, in which they assigned various errors in the original suit, and in the decree, and prayed that the same might be reviewed and reversed; and that the decree made by the ·trustee might be declared void, and the sale made by him set aside.   The court below reversed and annulled the decree, and declared the sale, and deed made by the trustee, void.   This decree was affirmed by the Supreme Court.   Various errors were stated as existing in the proceedings and decree of the court; but a prominent objection was, that a decree had been passed directing the sale of the real estate, without any evidence, except as derived from the answer of the guardian of the justice of the claim of the complainants, or the sufficiency of the personal estate.   *Chief Justice Marshall,* in delivering the opinion of the court, says : "In all suits brought against infants, whom the law supposes to be incapable of understanding and managing their own affairs, the duty of watching over their interests devolves, in a considerable degree, upon the court."

I think, therefore, that it would be the duty of the court, upon a bill of review filed by these infants, to reverse the decree of the 30th of April, 1836, and set aside the sale made by their trustee.

Upon this ground, I shall direct the bill of the complainants to be dismissed.   I cannot order the trustee to consummate a a sale, made in pursuance of a decree, which in my opinion, the court had no power to pass.

The views, thus expressed, render it unnecessary to decide upon the propriety of the sale.   I may say, however, that if the decree had been free from objections, the only difficulty I should have felt in sustaining the sale, would have been that it was a case in which the interests and rights of infants were involved.

It is now firmly established that the court will not set aside a sale, in all other respects unexceptionable, for mere inadequacy of price.   In *Glenn* against *Clapp*, 11 *G. & J.* 9, the Court of Appeals say : " the court will not set aside a sale, in all other respects unexceptionable, for inadequacy of price, unless the sum reported by the trustee is so grossly inadequate

as to indicate a want of reasonable judgment and discretion in the trustee. But where other just cause appears to doubt the propriety of the sale, it is a consideration very proper to be viewed in connection with it, that the sale has been also made at a reduced price." In this case the court vacated the sale, but exceptions to it had been filed after the order *nisi*, and before its final ratification. This was also the predicament of the case of *Williamson* against *Dale*, 3 *J. Ch. Rep.* 290.

As a general principle for the government of courts in reference to these judicial sales under the authority of the court, and of which the court is the vendor, I would adopt the rules stated by *Lord Elden* in *Morsci* against *the Bishop of Durham*, 11 *Ves.* 57, and *White* against *Wilson*, 14 *Ves.* 151, that after the sale has been confirmed it shall not be disturbed, unless in addition to the inadequacy of price there has been something unfair or unconscientious on the part of the purchaser. If in the case before me, the only parties whose interests were involved had been adults, and the decree had been unexceptionable, I should have held their silence and acquiescence for two years after the report of the trustees finally ratified, and new rights had intervened by the death of the purchaser, as conclusive evidence, either that they had originally assented to the terms under which this property was sold, or that they had subsequently adopted them, I would not have disturbed the sale at their instance. But the whole aspect of the case is changed, when it is seen that it is one in which the rights of infants are directly involved; from their silence and apparent acquiescence no unfavorable inferences can be drawn, and whatever may have been the hopes and expectations of *Mr. Tomlinson*, their infancy shows conclusively, that they never could have consented to the terms upon which it is said, that their estate was sold to him by the trustee. I think, however, that apart from any questions connected with the propriety of the sale, that the bill must be dismissed.

Whereupon, it is this 6th day of October, eighteen hundred and forty-five, adjudged, ordered and decreed by *Alleghany* county court, as a court of equity, that the bill of complaint of

*Mary Tomlinson, Alexander King* and *Lavinia* his wife, *Thomas Collins, Elizabeth Collins, Cincinnatus J. Neale* and *Mary Ann* his wife, against *Thomas J. McKaig, Gustavus Beall* and *Rachel* his wife, *Drucilla Baker, Jonas Beeson* and *Rebecca* his wife, *Sampson Thistle* and *Susanna* his wife, *Philip, Wingart, Alexander Wingart,* and *Philip Wingart, Senior,* be and the same is hereby dismissed with costs.

From this decree the complainants appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, SPENCE and MAGRUDER, J.

By PEARRE for the appellants, and

By F. A. SCHLEY and T. J. McKAIG for the appellees.

ARCHER, C. J., delivered the opinion of this court.

By the decree of *Alleghany* county court as a court of equity, passed on 30th October, 1836, certain lands in the proceedings mentioned were decreed to be sold. The trustee appointed to sell the same reported his sale to the court, which sale was ratified *nisi,* and at October term of said court was finally ratified and confirmed. The purchaser by his last will and testament devised the lands thus purchased to the complainants in this cause, as they allege, who pray that the trustee may be decreed to convey to the devisees under the will of the purchaser. The decree which it is thus proposed to be carried out, stands unappealed from, and unreversed.

This application is resisted on various grounds, which we shall proceed briefly to examine.

First, it is contended that the court which passed the decree had no jurisdiction of the case in which they did decree, and that if this be true, the court below were right in refusing to execute the decree.

If the bill filed in the cause in which the decree passed be considered as founded on the act of 1785, ch. 72, the jurisdiction of the court certainly could not be sustained, because there is no allegation in the bill that it would be for the interest and advantage of the infants and of the other persons con-

cerned, that the lands described in the bill should be sold. Such an averment is necessary to give the court jurisdiction under this act.

The enquiry will then be whether the jurisdiction of the court is maintainable under the act of 1820, ch. 191. That act declares in its 8th section that if the parties entitled to an *intestate's* estate cannot agree upon the division thereof, or in case *any person entitled to any part be a minor*, an application shall be made to the county court of the county where the estate lies, when it becomes the duty of the court to appoint commissioners, who having qualified as prescribed by the act, are to perform the duties particularly set forth in the act, and if their judgment shall be confirmed by the county court, then rules are prescribed for the heirs to take the property by election, and if all refuse the property is to be sold, and the proceeds distributed among those entitled thereto.

By this act no allegation is necessary in the application to the court, that proceedings under this act would be for the benefit and advantage of the parties concerned; but the action of the court is demanded upon the allegation that the party has died intestate of such an estate as is described by the act, that the parties entitled to the intestate estate cannot agree upon a division thereof, or that some of the parties are minors.

That a formal application to the court may be made by bill to the court as a court of equity has been heretofore decided by this court.

The allegation in this bill conforms to the act of Assembly just adverted to, it avers that *Jesse Tomlinson died intestate* of lands *held in fee simple* by him, that they descended to his heirs-at-law who are particularly specified, two of whom are minors, and the bill prays general relief, *and such other and further proceedings as may be necessary.*

The above allegations, in our judgment, brought the case within the provisions of this act, and gave the court jurisdiction of the cause. The complainants were entitled under the prayer for general relief, and further proceedings, to such action of the court and decree, as the case made in the bill

would by law entitle them to. That they did not specifically pray for a partition, or for the appointment of commissioners to divide and value the land, is immaterial; as far as it relates to the question of jurisdiction, their prayer for general relief, and further proceedings, was sufficient. Nor is it material to the case that the complainants assumed that the land was incapable of division, and that there was a specific prayer for the appointment of a trustee to sell the lands. The one may have been an inappropriate averment, and the other an inappropriate prayer, for such a case; but they will not vitiate averments which confer jurisdiction, or affect a prayer for general relief, which always justifies the ultimate action of the court thereupon in pursuance of the case made by the bill.

The court, however, in its action upon this bill, did not pursue the provisions pointed out by the act of 1820, ch. 191, and its proceedings therein are no doubt erroneous. But the concession of this fact does not touch the question under consideration. It is the allegations in the bill which confer jurisdiction, and which are to determine the power of the court. If the steps taken by the court subsequent to the filing of the bill are not justified by law, or if they decree without proof or upon insufficient proof, that is error in the exercise of jurisdiction, but does not indicate a want of jurisdiction.

It has been properly said that the true test of jurisdiction will in all cases be found in the determination of the question whether a demurrer will lie to a bill.

If this be so, neither the erroneous action of the court after the filing of the bill, nor defective proof could affect the question of jurisdiction.

In this view of the subject it is unnecessary for us to determine, whether if the county court had no jurisdiction to pass the original decree, it would be competent for the same court to refuse an application to execute such decree. Again, it is urged that if the court had jurisdiction to decree, still on an application to carry out the decree, the court will look to all the circumstances attending the sale, and will refuse to execute the decree if they find that fraud or surprise exists. Before

the ratification of a sale made by authority of the Chancery court, all objections to a sale are open for consideration, and the sale will be set aside upon the proof of error, mistake, misunderstanding or misrepresentation as to the terms or manner of the sale. Before ratification, the sale must appear to be in all respects fair and proper, or it cannot receive the sanction of the court. But it is equally true that after the sale has been confirmed, and after the term has passed and the proceedings are considered as enrolled, the court possesses no power over its decree to annul the same, except by bill of review for error apparent on the face of the decree, or for some new matter discovered since the decree, or by an original bill to annul the same for fraud. Sometimes bills are necessary to be filed to carry into execution decrees, and the bill and proceedings now before us are of that description. In such cases the law appears to be as settled by the later English cases, both in Chancery and on appeal, that the law of the decree is not examinable; and that the law of the decree will be enforced unless delayed or stayed for a rehearing of the former cause if not enrolled, or if enrolled, for a bill of review, *Mitford Plead:*— and the cases there cited.

If this be the law as applicable to such a case, then the decree appealed from must be erroneous, as the court below has dismissed the bill of the complainants without examining the complainants' right to stand in the place of the purchaser, and in assuming the error and invalidity of the decree which is sought to be enforced.

That a right exists on the part of the infant defendants to the original bill, to question its regularity and validity, either by a bill of review, or an original bill to vacate the same for fraud, cannot be doubted; and we think the court below should have stayed the execution of the decree until an opportunity might be had of testing the validity of the original decree by an original bill, to be filed by the defendants for that purpose.

The regularity of the proceedings after the filing of the bill in the original case, has not been attempted to be vindicated. Not one of the steps demanded by the act of 1820, ch. 191,

have been taken, no order or decree for a commission was passed, of consequence no judgment of commissioners was had, or confirmation of such judgment; no privilege of election was extended to the heirs-at-law, without which the final decree of the court could not have been the legal exercise of jurisdiction.

That such matters would have been the subject of a bill of review in an English Court of Chancery, if a decree had there been passed under such a law, could not be questioned. In that tribunal the proceedings in the cause are recited in the decree, and such errors would, therefore, have appeared on the face of the decree, and would have constituted errors which the court would have noticed on a bill of review.

In this State the English practice of stating the proceedings in the decree has not prevailed, and to make the bill of review as effective as it is in the English Court of Chancery, the proceedings in the cause should be the subject of revision on a bill of review in the same manner as if they were stated on the face of the decree. Unless such an examination was allowable, few cases would occur in which bills of review could effect the object intended to be attained by them; for as the proceedings are not stated on the face of the decree, few errors which would on such a bill be the subject of review in the English courts could be reached. We accordingly find in 8 *Peters*, 128, the Supreme Court reversed a decree on a bill of review passed by the circuit court for the county of *Washington*, in the *District of Columbia*, where the same practice of framing decrees exists as here; and in the opinion of the court on the reversal of the decree, several errors were adverted to which did not appear in the body of the decree.

In the case of *Hollingsworth and McDonald*, 2 *H. & J.* 238, this court say that nothing appears *in the proceedings* on the first bill, to support the position that there is error apparent on the decree, and the court advert to the fact, that certain deeds which were the foundation of the proceedings then before the court, were not made a part of the proceedings in the original suit, clearly intimating, as we think, that had such deeds appeared *in the proceedings*, they could be noticed on a

bill of review, although they had not been adverted to in the decree.

The same principles are sanctioned by this court in the case of *Hunter vs. Hatton and wife,* where the court say, that certain errors existing in an equity proceeding might be examinable by a bill of review. These errors were such as according to our practice would not appear in the decree.

In *Birch & Scott,* 1 *G. & J.,* this court announce the rule to be that a bill of review will only lie for errors apparent on the face of the decree, or for some new matter discovered since the decree. In thus saying, this court but announce the English rule. They were not called upon to apply it to our peculiar practice in framing decrees. We can alone reap the beneficial fruits of the English rule by causing the bill of review to reach such proceedings in the cause as would, according to the English practice, appear on the face of the decree.

We are accordingly of opinion, that the decree of *Alleghany* county court be reversed; and that the cause be remanded to that court, that by an order of said court to be passed on the application of the parties, time be given to the defendants, within which they shall be at liberty to file an original bill to set aside the decree for fraud, and to the infants, within which they may file a bill of review to vacate the decree for errors appearing on the face of the decree, and that in the meantime all proceedings in the present suit be stayed; and should either of the said bills be filed within the time allowed by the county court for that purpose, that proceedings in this suit be further stayed until the action of the court shall be had on the bill so filed.

**DERCEE REVERSED WITH COSTS, AND CAUSE REMANDED.**