JOHN S. PEACOCK, Assignee of the STATE OF MARYLAND, *vs.* GEO. W. PEMBROKE, Garn. of JOHN B. RUSSELL and JOHN A. CLARKE.

Where a judgment in favor of the State is paid by a surety, there is no statute which authorises an assignment thereof to be made by the State, or by any officer or agent acting for the State, to such surety, and it cannot be done, under the act of 1763, ch. 23, sec. 8, by the *attorney* for the State.

Under the acts of Assembly of this State payment to the attorney of the State is no satisfaction of the judgment in favor of the State, and his release or receipt is no discharge of it.

APPEAL from the Circuit Court for Saint Mary's county.

This was an *attachment,* issued at the instance of Peacock, as *assignee of the State,* on the 29th of October 1850, against Russell and Clarke, and laid in the hands of Pembroke, as garnishee, who appeared and moved to quash the writ, for the reasons stated in the opinion of this court.

The writ recites, that at March term 1848 of Saint Mary's county court, the State recovered judgment against Russell,

Peacock and Clarke, which judgment the said Peacock hath since paid and satisfied to the State, "and the said State hath made over and transferred unto the said John S. Peacock the judgment aforesaid, according to the directions of the act of Assembly in such case made and provided, as by the record thereof in the court fully and clearly appears, in virtue of which assignment and the act of Assembly aforesaid, the said Peacock, as assignee of the State, is entitled to have his execution against the said Russell and Clark; therefore," &c.

The court, (CRAIN, J.,) quashed the writ, and Peacock appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*B. T. B. Worthington* for the appellant, argued, that the State was competent to assign the judgment on which the attachment issued, and that the assignment had been regularly and properly made. The act of 1763, ch. 23, sec. 8, provides for the circumstances under which the attachment would issue, and they are the very ones which exist in this case. I refer also to 4 *H. & J.*, 307, *Sotheren vs. Reed;* 5 *Do.*, 423, *Merryman vs. The State;* 7 *Md. Rep.*, 102, *Griffith vs. Etna Fire Ins. Co., Garn. of Upton*, and *Ev. Harris*, 396.

No counsel appeared for the appellee.

ECCLESTON, J., delivered the opinion of this court.

Under a motion to quash this attachment four reasons have been assigned:

1st. That the attachment could not properly issue in the name of Peacock, who was a party defendant in the judgment.

2nd. That the attachment issued after the judgment on which it was issued was dead.

3rd. That the assignment could not be made by the State of Maryland.

4th. That if the assignment could be made by the State of Maryland, it was not properly made.

In our opinion the third reason furnishes a sufficient ground

for affirming the judgment, and therefore the others need not be considered.

The appellant's counsel insists that the attachment was properly issued under the act of 1763, ch. 23, sec. 8, which authorised the State, as plaintiff, in the original judgment, to assign the same to the appellant, because as surety he had paid the claim. But neither that statute or any subsequent law provides what officer or person shall make an assignment to a surety where the State is plaintiff. When the State is to issue a patent, to make an obligation, or to transfer any of its rights, some officer or agent is vested with authority to act for the State, except where the obligation or transfer is made by direct legislation on the subject.

Perhaps it may be supposed the plaintiff's attorney has authority to make an assignment under the act of 1763. The correctness of such a supposition was questioned in *Norwood vs. Norwood, 2 H. & J.*, 238. There the executrix of D. Dulany had obtained judgments against Samuel Norwood and Edward Norwood, upon a bond given by them to D. Dulany, and Mr. Cook, as attorney for the plaintiff, assigned to Samuel the judgment against Edward; and thereupon Samuel, in his own name, as assignee of the executrix of D. Dulany, issued a *fieri facias*, against which an injunction was obtained by Edward. At a subsequent term a motion to dissolve the injunction was overruled. Afterwards the chancellor was very much perplexed with the difficulty of ascertaining, from the evidence, whether Samuel was a mere surety, which was considered as "the main, if not the only question in dispute." The auditor was then directed to state an account between the parties, charging Edward with but one-half of the bond to Dulany, and giving him credits for payments made by him. After a report by the auditor it is said: "Upon the whole, the chancellor conceives it best to consider the complainant as the sole principal in the bond to Dulany." Whereupon another account was ordered to be stated by the auditor, differing substantially from the former. And it was afterwards decreed that the injunction should be dissolved, but that only the costs at law, and a particular sum named, with interest, should be

levied under the execution. But because Edward had a decree against Samuel, for a sum larger than the amount which Samuel was held to be entitled to under the execution, it was finally adjudged, that the injunction should be continued until the further order of the chancellor. From this decision an appeal was taken by Samuel.

In the Court of Appeals it was contended by the appellee's counsel that the appellant must prove he was a surety, and as such had a regular and legal assignment. That the execution issued in the name of the appellant, as assignee of the plaintiff, was not justified by the act of 1763, under an assignment made by the attorney, but it should have been made by the principal creditor or plaintiff in the judgment.

The court reversed the chancellor's decree and dissolved the injunction, but held that Samuel was co-principal and joint debtor in the bond with Edward; therefore, they only charged him with one-half of the bond. And they decreed that the appellant should be permitted to take out execution against the appellee on the judgment, but that it must be sued out in the name of Rebecca Dulany, as executrix of Daniel, for the use of the appellant. This decision, therefore, in the Court of Appeals, simply recognised the assignment by the attorney as an *equitable* assignment of one-half of the judgment to a co-principal in the bond, on which the judgments were obtained. The act of 1763 makes no provision for such a case, but, in reference to the assignment of judgments, relates only to judgments which have been satisfied by sureties. And considering the appellant not to be a surety but a co-principal, there was no necessity for the court to decide whether the attorney could make a legal assignment under the act to a surety.

In ordinary cases, where the State is not the real plaintiff, the attorney has control and authority over the suit, in many respects, and amongst others he has a right to receive the money due to his client, but he has no right to receive money due to the State upon judgment in such a case as that recited in the attachment.

The act of 1831, ch. 68, sec. 3, provides: "'That hereafter

no payment of any money or debt due the State, either in suit or on judgment, shall be valid and effectual, unless made to the treasurer, or to such person as shall have been specially appointed and authorised by him to receive the same, or unless made to such sheriff, coroner or elisor, as may or shall be authorised to receive the same by virtue of any execution or other judicial process issued on such judgment to enforce the recovery or payment thereof, any law, usage or custom to the contrary, notwithstanding." See also the act of 1829, ch. 90, sec. 4.

Should it be conceded that the plaintiff's attorney, by virtue of his general authority as such, may, under the act of 1763, make a valid legal assignment of the judgment in ordinary cases, yet we think the attorney of the State cannot do so in a case like the one under consideration, because of his restricted or limited authority. Payment to him is no satisfaction of the claim, and of course his release or receipt would be no discharge of it. We therefore cannot suppose he has authority to assign the judgment in the mode contemplated by the act of 1763. And finding no legislative enactment giving power to any officer or agent to make such an assignment, where the State is the real plaintiff, we must decide in favor of the appellee, upon the ground taken in the third reason assigned for quashing the attachment.

This decision is confined to the subject of a *legal* assignment under the act of 1763, and has no reference to the *equitable* rights of sureties who have paid off judgments.

*Judgment affirmed.*