## SAMUEL J. LANAHAN et al. *vs.* WILLIAM LANAHAN.

*Petition to File Bill of Review—Settlement With Surviving Partner for Interest in Firm of Deceased Partner Held to Have Been Fairly Made and to Include Interest in Trade-Mark.*

A bill of review to re-open a decree upon the ground of new matter or evidence discovered since the decree cannot be maintained unless the matter relied on be not only newly discovered but also such as the party applying for leave to file the bill could not, by the exercise of reasonable diligence, have discovered and availed himself of at the time the decree was made.

The application for leave to file a bill of review is addressed to the sound discretion of the Court.

In 1901 a partnership composed of three brothers, Samuel, William and Charles, was engaged in selling a whisky called "Hunter Rye," in connection with a trade-mark. Upon the death of Charles, intestate, in that year, letters of administration were granted on his estate. A trust company was constituted trustee of his adult children and guardian of his infant children. An examination of the firm's business was made by the administrators and the trustee, and an agreement made between them and the surviving partners as to the value of the interest of Charles in the business. A bill in equity was filed by the administrators of his estate and a decree was made by which the proposed partnership settlement set forth in the bill was approved. Under this settlement the surviving partners paid to the administrators of Charles the sum of $1,215,872, and the administrators were directed by the decree to convey to the surviving partners all the share and interest of Charles in the assets and property, good-will and trade-mark and other rights of the partnership. A few years afterwards newly appointed administra-

tors *d. b. n.* of the estate of Charles filed the petition in this case, alleging that in the said ascertainment of the interest of Charles in the firm no allowance was made for his interest in the trade-mark and good-will, and that the former administrators and the trustee were induced to approve the settlement by fraudulent statements made to them that Charles had no interest in the trade-mark. The petition prayed for leave to file a bill of review. *Held,* upon an examination of the evidence, that the allegations of the petition are not supported by the proof, but that on the contrary the interests of Charles in the trade-mark and good-will were taken into account in the settlement and were allowed for, and that no deception was practiced by the surviving partners in obtaining the settlement, and that consequently leave to file a bill of review should be denied.

*Decided February 11th, 1909.*

Appeal from Circuit Court No. 2 of Baltimore City (GORTER, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*George R. Willis* and *James McEvoy, Jr.* (with whom was *Francis T. Homer* on the brief), for the appellants.

*Frank Gosnell* and *Edgar H. Gans* (with whom was *Bernard Carter* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

This appeal was taken from an order of the Circuit Court No. 2 of Baltimore City, passed December 1st, 1908, in the case of *Samuel J. Lanahan and Thomas M. Lanahan, Administrators of Charles M. Lanahan, deceased, and Samuel J. Lanahan, in his own right* v. *William Lanahan,* refusing the petition of Adelaide Brennan and George R. Willis, ad-

ministrators *d. b. n.* of Charles M. Lanahan, deceased, for leave to file a bill of review to review the decree passed in said cause on the 27th day of May, 1902. The Court directed a copy of the petition to be served upon William Lanahan, the defendant named therein, who appeared and demurred to the petition. The Court sustained the demurrer and dismissed the petition, and adjudged the petitioners to pay the costs.

The petition is brought upon what is alleged to be new matter. The personal estate of Charles M. Lanahan, deceased, and all persons beneficially interested therein were represented in that cause by his administrators, and the Safe Deposit and Trust Co. of Baltimore, as trustee of his adult children and as guardian of his minor children, was consulted as to the terms of the decree and recommended that it be passed. The Court will not grant leave to file a bill of review, "without an affidavit, that the new matter could not be produced, or used by the party claiming the benefit of it in the original cause. The affidavit must also state the nature of the new matter, in order that the Court may exercise its judgment upon its relevancy and materiality." *Story's Equity,* Pl. 2nd Ed., secs. 412-413. In *Whelen* v. *Cook,* 29 Md. 7, it is said: "A Bill of Review can be brought only for error in law appearing on the face of the proceeding or upon the discovery of new matter pressing upon the decree subsequent to the period when it could have been used; and in such case there is a qualification of equal importance with the rule itself, that the matter must not only be new, but such as the party by the use of reasonable diligence could not have known, for if there be any laches or negligence it destroys the title to relief. The Courts have uniformily and rigorously adhered to this qualification, deeming it better that individual injury should be inflicted in particular cases, than that rules established to prevent general mischief, should be broken down."

The record shows that in 1860 William Lanahan, the elder, was engaged in the wholesale liquor business in Baltimore City. He originated a certain trade mark which consisted

of the arbitrary word "Hunter," and this trade mark was
used as a means of identifying the whiskey manufactured by
him. In 1864 his son, Samuel J. Lanahan, was admitted as
a partner in the business. The partnership then formed was
known as William Lanahan & Son, and the firm name has
continued from that time until the present. The partnership
formed in 1864 was continued until 1868, when William
Lanahan, Senior, died, and the business was continued by
Samuel J. Lanahan alone until 1875, when his brother Wil-
liam Lanahan, was admitted to a partnership in the firm.
In 1878 another brother, Charles M. Lanahan, was admitted
as a partner. Ever since the formation of the firm of Wil-
liam Lanahan and Son the trade mark "Hunter," which was
first adopted and used by William Lanahan, the elder, has
been in continuous use by the firm as a trade mark for its
whiskey. For some years there was very little bottling of
Hunter whiskey by William Lanahan, or the firm of William
Lanahan and Son, but about the year 1882 the firm devised
a label, which consisted of the words "Hunter Baltimore Rye
Whiskey" in script type, and in addition for such label pur-
poses adopted a symbol, or device of a man, or hunter on
horse back, holding his hat in his hand, in the attitude of
waving the same, and these labels were supplied to the cus-
tomers of the firm, who purchased the Hunter whiskey in
bulk, and the names and addresses of the customers were
printed below the hunter symbol on the label, the whole being
enclosed in a gilt border or band. In 1894 the firm began to
bottle and offer for sale in its bottled form to the purchasers,
consumers and users of their whiskey a package of their
Hunter whiskey which was put up under a certain trade
mark and label used for the purpose of identifying the bot-
tles, or packages filled with whiskey personally bottled, is
sued, and sold by it, which trade mark consisted of the arbi-
trary word "Hunter" displayed in white type on a black
label, the figure of a huntsman mounted on horseback, hold-
ing his hat in his right hand and waving the same, contained
in a white circle, and underneath the words "Baltimore Rye,

Bottled by William Lanahan & Son, Baltimore," in white characters. These trade marks of the firm were registered in the patent office in the City of Washington, and certificates of registration thereof were issued to the co-partnership of William Lanahan & Son. ·

On the 31st day of January, 1901, an inventory of the assets of the co-partnership was taken, in which all the partners concurred, and in which Charles M. Lanahan actively participated. This inventory was as follows:

ASSETS.

| Merchandise | $652,845.98 |
| Cash | 135,591.54 |
| Cash in bank | 88,007.41 |
| Loans | 405,270.38 |
| Notes for merchandise, etc | 507,923.20 |
| Securities | 339,308.91 |
| Real estate | 7,858.20 |
| Open accounts | 772,458.72 |
| | $2,909,264.34 |

LIABILITIES.

| S. J. Lanahan | $952,661.69 |
| William Lanahan | 903,767.33 |
| C. M. Lanahan | 1,017,683.98 |
| | $2,874,113.00 |
| Estate—H. W. Lanahan | 22,456.72 |
| Sundry accounts | 12,685.62 |
| | $2,909,264.34 |

One week after the taking of this inventory the co-partnership was dissolved by the death of Charles M. Lanahan. Samuel J. Lanahan and William Lanahan, the surviving partners, thereupon formed a new partnership under the firm name of William Lanahan & Son, and letters of administration upon the estate of Charles M. Lanahan, who had died intestate, were granted by the Orphans' Court of Baltimore

City to Samuel J. Lanahan and Thomas M. Lanahan, the latter being an uncle of said deceased.

On the 27th day of May, 1902, by a decree of the Circuit Court N. 2 of Baltimore City, passed in the cause mentioned in the beginning of this opinion, it was adjudged, ordered and decreed that the proposed partnership adjustment and settlement set forth in the bill filed in that case be approved, and Samuel J. Lanahan and Thomas M. Lanahan, administrators of Charles M. Lanahan, deceased, were authorized and directed, upon receiving from the said Samuel J. Lanahan and William Lanahan, the surviving partners of said deceased, the sum of one hundred and thirty-eight thousand dollars to be paid as to two thousand dollars thereof in promissory notes of that amount of Oliver Reeder being one-third equal part of certain promissory notes of said Reeder amounting to the sum of six thousand dollars held by said partnership at the time of said Charles M. Lanahan's death, and as to the residue or sum of one hundred and thirty-six thousand dollars in money, to assign and transfer to them, the said Samuel J. Lanahan and William Lanahan, all the interest and undivided share of the said Charles M. Lanahan, deceased, and his personal representatives in all the assets, good will, trade marks, property, choses in action, demands and rights of every kind of the said partnership composed of Samuel J. Lanahan, William Lanahan, and Charles M. Lanahan, and trading under the name of William Lanahan and Son; with the exception only of certain real estate situated in the city of Chicago belonging to said partnership, and mentioned in said bill, and exclusive of the fee simple property in the city of Baltimore, known as No. 20 Light street, which was occupied by the firm as partnership property. And it was further adjudged and declared that such payment of one hundred and thirty-eight thousand dollars so to be made by the said Samuel J. Lanahan and William Lanahan, will, in addition to the sum of one million, seventy-seven thousand, eight hundred and seventy-two dollars and thirty-nine cents, which has been heretofore paid by the said Samuel J. Lana-

han and William Lanahan, surviving partners, to the said administrators of Charles M. Lanahan, deceased, be in full settlement, payment and satisfaction of all interest of the said Charles M. Lanahan and his personal representatives in the said partnership, its business, assets, property and rights of every kind, and of all claims of the said Charles M. Lanahan's estate and personal representatives against the said Samuel J. Lanahan and William Lanahan in relation to or arising out of the said partnership or its business or the winding up and closing of the same with the exception of the real estate aforesaid. And it was further adjudged and declared that this decree shall and it does hereby complete the said transfer by the administrators to the surviving partners of all the share and interest of the said Charles M. Lanahan in the *assets and property, business, good will and trade mark and other rights of said partnership and in all choses in action, claims and demands of the said late firm or partnership of William Lanahan and Son as by this decree provided;* and that the said Samuel J. Lanahan and William Lanahan by the passage of this decree assume and are hereby subjected to the entire obligation of all debts and liabilities of said late partnership. When the petition in this case was filed both the original administrators of the estate of Charles M. Lanahan were dead, Samuel J. Lanahan having died in January, 1908, and Thomas M. Lanahan on May 17th, 1908.

On the 2nd of April, 1908, Mr. George R. Willis, as counsel for the widow and children of Charles M. Lanahan, wrote to the surviving administrator, that they desired to have the settlement made between the administrators of the personal estate of Charles M. Lanahan and the firm of William Lanahan and Son, growing out of the dissolution caused by the death of Charles, reviewed, and to have "certain errors and omissions" corrected in the valuation of the assets belonging to the firm at that time, and inquired of Mr. Lanahan if he would be willing, if requested by the widow and children of Charles M. Lanahan, to institute the necessary proceedings whereby the settlement might be reviewed, and the "errors

and omissions corrected." In replying to this letter on April
3rd, 1908, Mr. Lanahan stated that the settlement made be-
tween the administrators of Charles M. Lanahan, deceased,
and the firm of William Lanahan and Son was made after
full and careful investigation made by him, as one of the ad-
ministrators, as to what the assets of that firm consisted, and
as to their full value, and as to the value of the interest of
the estate of Charles M. Lanahan therein, and as to all the
rights of his estate against the surviving partners of the firm,
with the full determination that his estate should receive full
value for all its interest in the firm assets and full payment
for all its claims against the surviving partners. He stated
that in this investigation he had all the necessaryı facts and
information at his disposal; that he considered at that time,
and that he considered at the time of writing to Mr. Willis
that the estate of Charles M. Lanahan received full value in
all its interest in the firm assets of every kind and descrip-
tion, and was paid in full for all claims of his estate against
the firm and the surviving partners thereof; that there were
no errors or omissions in the valuation of the assets belonging
to the firm at the time of the settlement, and that therefore
he would decline to institute any proceedings to have the
settlement reviewed.

After the receipt of this letter, Mrs. Annie S. Lanahan,
the widow of Charles M. Lanahan, filed a petition in the
Orphans' Court of Baltimore City in which she asked that
Court to pass an order commanding Thomas M. Lanahan,
surviving administrator of her deceased husband's personal
estate, to take the necessary proceedings to re-open the decree
by which the partnership settlement had been made and ap-
proved. Thomas M. Lanahan answered this petition, and the
allegations of the petition and answer will be presently con-
sidered. Before any further proceedings could be had in the
Orphans' Court upon said petition and answer Thomas M.
Lanahan died.

In the letter of Mr. Willis' above referred to the claim is
made that there were "errors and omissions" in the valuation

of the interests of Charles M. Lanahan in the co-partnership business, and in the petition of Mrs. Lanahan to the Orphans' Court the errors and omissions which he claimed to exist and which he desired to have corrected are definitely and specifically pointed out, and how they were alleged to have occurred is stated.   It is alleged that in the settlement of her deceased husband's interest in the firm allowance was made only for the tangible assets of the firm, "and no allowance whatever was made for the good will thereof or any of the trade mark, brands or trade names possessed by said firm, and no mention whatever was made of the valuable brand, or trade-mark 'Hunter Rye,' " and she charged that the elimination of these elements of value was procured by fraud, and was done with the intent to cheat her and her children.

Charles M. Lanahan left surviving him a widow and five children, three of whom were adults.   The adult children executed deeds of trust to the Safe Deposit and Trust Company of Baltimore in which that company, as trustee, was given full power and authority to collect and compromise all claims and demands belonging to or growing out of the trust estate or any part thereof, and that company was also appointed and qualified as guardian of the minor children.   The petition in this case is predicated upon the alleged fact that in the ascertainment of the interest of Charles M. Lanahan in the firm of William Lanahan and Son, no allowance was made for the trade-mark, trade names, brands, and good-will of the firm.   This allegation, upon which the whole case of the petitioners rests, is repeated a number of times in the petition.   This averment appears first in the tenth paragraph of the petition in which it is alleged that no account was stated of the trade-marks and good-will, "and no allowance made therefor, and if any allowance was made it was of such amount as in no wise represented the true value thereof;" and in the twelfth paragraph it is averred that "no true and accurate account was taken of the value of the trade-mark 'Hunter Rye' and that nothing was allowed, or awarded his estate for said trade-mark, trade names, brands and good-

will, and no account taken thereof;" that in April, 1908, Mrs. Lanahan discovered that "no valuation had been placed upon said trade-marks, brands and good-will belonging to said co-partnership;" and in the fourteenth paragraph of the petition it is alleged that within nine months from the filing of the petition they had discovered "that no account had ever been taken of said trade-marks, brands and good-will in the settlement." No charge of unfairness is made against the Safe Deposit and Trust Company, or any of its officers, or against the integrity of Thomas M. Lanahan in connection with the settlement; but it is alleged that that company and Thomas M. Lanahan were misled by false and fraudulent statements made by the surviving members of the said partnership, and were induced by such false and fraudulent statements to approve the settlement; that Thomas M. Lanahan was deceived by the surviving partners of Charles M. Lanahan into believing that his estate had no interest in said trade-marks, trade names, brands and good-will of William Lanahan and Son, and that said settlement was predicated upon the belief of this fact.

It was the duty of the administrators of Charles M. Lanahan to effect a just and equitable settlement between his estate and the surviving partners, and was also the duty of the surviving partners to give to the administrators of the deceased a full statement of all his interests in the co-partnership. The trade-marks, brands and good-will of the firm constituted a part of its property or assets, and the deceased partner's interest therein devolved upon his administrators, and it was their duty to have considered them in the valuation of his share.

It was considered best for the interest of the estate of Charles M. Lanahan, and of all interested therein, and on all accounts desirable, that the new firm of William Lanahan and Son, composed of the surviving partners, should become the purchasers for a proper consideration of the whole interest and share of Charles M. Lanahan, deceased, in all the partnership property and assets, and all rights and claims of every

description of his representatives in, to and in consequence thereof, they assuming the entire obligation of all debts and obligations of the partnership. The ascertainment of the full and adequate sum or price to be paid by the surviving partners for the entire interest and share of the deceased in the partnership and its assets and property, and in settlement and satisfaction of all claims of the personal representatives against them was left to Thomas M. Lanahan, in view of the relation he occupied to the subject as administrator without pecuniary interest in the question, and the settlement which was approved by the decree assailed by the petition was made with a knowledge and full consent and approval of Mrs. Lanahan, the widow, and her adult children.

The valuation of the interest of the deceased partner in this busines required the exercise of good judgment and large business experience. It involved the right determination of a number of important questions. As appears by the inventory above set forth, the interest of Charles M. Lanahan in the firm was $1,017,683.98. This, of course, is upon the assumption that the value of the assets was correctly stated and that the loans, notes and open account amounting in the aggregate to $1,685,652.30, could be collected at their face value; but it is admitted that some portion of them was subject to certain trade discount upon collection. This inventory, however, did not include the wood-will and trade-marks, and their value at the death of Charles M. Lanahan would enhance his interest; but a dispute arose as to the trade-mark "Hunter." This trade-mark was used by the old firm of William Lanahan and Son, composed of Samuel J. and William Lanahan, and they claimed to be the exclusive owners thereof and that Charles acquired no interest in it when he became a member of the firm, in 1878. They claimed that while the firm, composed of the three brothers, had used this trade-mark from 1878 to 1901, the exclusive title remained in the surviving partners. This claim was made known to Thomas M. Lanahan, administrator, but was not admitted by him. This sufficiently appears from the letter to Mr. Willis above referred to;

but is definitely and explicitly stated in his answer filed in the Orphans' Court for Baltimore City to the petition of Mrs. Lanahan. This answer, after stating that the brand or trademark "Hunter Rye" at the time of the death of Charles M. Lanahan was valuable, and that he knew it was claimed by the surviving partners, and further that he contended in the settlement for the interest of the estate in this trade-mark, contains the following averments: "Your respondent admits that the hereinbefore mentioned equity proceedings will show that the money paid by the surviving members of the firm of William Lanahan and Son for the interest of the said Charles M. Lanahan therein was one million, two hundred and fifteen thousand, eight hundred and seventy-two dollars and thirty-nine cents ($1,215,872.39), but this respondent denies, as is averred in the tenth paragraph of the petition, that said sum was paid for the interest of the decedent's estate in the tangible assets of said firm only, and he further denies, as is alleged in said paragraph, that no allowance whatever was made for such interest as the decedent may have had in the good-will thereof of any of the trade-marks, brands or trade names used by said firm; on the contrary, this respondent avers, as such equity proceedings upon inspection will show, that the surviving partners of said firm purchased from the estate of the deceased partners therein, not only all the interest of the estate of the deceased partner in the tangible assets of said firm, but also specifically " all the share and interest of the said Charles M. Lanahan, deceased, and his personal representatives in all the assets, good-will, trade-marks and other property, choses in action and demands and rights of every kind of said partnership of William Lanahan and Son, with the exception only of the real estate owned by said firm, which consisted of some lands situate in the city of Chicago, Ill., and the warehouse property, known as No. 20 Light Street, in the City of Baltimore."

The inventory stated the value of the merchandise to be $652,845.98. The new firm used some of the whiskey in

bond included in this item, but the amount used is not stated. When the new partnership purchased and took over on October 1st, 1901, the stock of whiskey of the old firm remaining in bond, its full market value was assertained by a competent and experienced expert employed by Thomas M. Lanahan, administrator, and it was found that the price so fixed yielded for the estate of Charles M. Lanahan the sum of $74,466.94 in excess of the book value thereof shown by the balance sheet or inventory. There was real estate included in the inventory, and valued at $7,855.20. The difficult questions, therefore, with which the administrators had to deal were: First, what percentage of reduction should be made from the face value of the loans, notes and open accounts; secondly, what amounts should be allowed to the estate of Charles for the good-will and trade-marks; thirdly, what allowance should be made for the whiskey in bond used by the new firm from February 7th, 1901, to October 1st, 1901, the date when all the stock of whiskey was taken over by the new partnership. The questions as to how the cash, securities, real estate and the additional value of whiskey in bond should be treated were without difficulty.

Inasmuch as the Safe Deposit and Trust Company of Baltimore had been appointed trustee for the adult children of Charles M. Lanahan, and had been appointed and qualified as guardian of his minor children, Thomas M. Lanahan, administrator, on this account and also because of the great experience and skill of the officers of that company in dealing with questions of this kind, consulted with them as to the contemplated adjustment and settlement of his decedent's interest in said partnership. The record does not show in detail what was done as to each of the questions with which they were called upon to deal, but it does show that all questions between the administrators and the surviving partners were settled and adjusted, and an agreement reached which was approved by Mrs. Lanahan and the adult children, and that the terms of this settlement were reported to and ratified by the

Court.   Before this decree was passed Mr. Marshall, the Second Vice-President of the Safe Deposit and Trust Company, filed in the case a certificate stating that that company had been consulted as to the proper adjustment and settlement to be made of the affairs and business of the partnership lately existing between Samuel J. Lanahan, William Lanahan and Charles M. Lanahan, under the name of William Lanahan and Son, and dissolved by the death of Charles M. Lanahan on the 7th day of February, 1901; that it had carefully examined into the matter and considered the questions connected therewith, and that it fully approved the terms of final settlement between the surviving partners and the estate of Charles M. Lanahan set forth in the bill of complaint, and recommended that said settlement be made for the benefit of all persons interested in the estate of said deceased.   Exactly what was done, as shown by the original bill and decree, is, we think, fairly and accurately stated in the appellee's brief, as follows: "As to the real estate, they decided that it should be excluded from the settlement, as it would devolve in equal parts upon Samuel J. Lanahan, William Lanahan and the heirs of Charles, individually.   As the real estate was inventoried at $7,858.20, Charles' share would be one-third of this amount, or $2,619.40, which would have to be deducted from the total share of Charles shown by the inventory.   The account would then stand:

To the credit of Charles M. Lanahan by
    Inventory........................... $1,017,683.98
Deduct his one-third real estate excluded
    from settlement....................     2,619.40
                                          _____
                                          $1,015,064.58

"Thomas M. Lanahan then secured the services of a capable expert to value at their true market value all the whiskies of the late firm on hand October 1st, 1901.   This value was found to be $223,400.82 more than the inventoried value, and Charles' share in this increase value would be one-third,

or $74,466.94, and this added to the amount already. ascertained would make the amount due Charles' estate——

$1,015,064.58

74,466.94

---

$1,089,531.52

"There still remains to be considered the value of certain whiskey in bond which had been used by the new firm from February 7th, 1901, the probable loss in collection of the $1,685,652.30 loans, notes and open account, and the value of the good-will and the disputed title of the trade-mark 'Hunter' and its value. The original bill and decree show that these matters were all considered together. A settlement was reached whereby the surviving partners took all the loans, notes and open accounts at their face value, and took all the risks therefor of their depreciation; they assumed all the liabilities of the old partnership and paid $138,000 over and above the $1,077,872.39 already paid to the estate of Charles. In consideration of which the administrators of Charles agreed to turn over and did turn over by the decree all the share and interest of Charles in the business of the late firm, including the trade-marks and good-will. In addition to the value of all the tangible assets, there was paid the administrators of Charles the sum of $126,340.87. It must be remembered, however, that this result is arrived at by taking the whole of the $1,685,652.30 of loans, notes and open accounts at their face value. To ascertain exactly how much was given the administrators of Charles in the settlement over and above the tangible assets, it would be necessary to add to this $126,340.87, a sum equal to one-third of the losses in collecting this $1,685,652.30, for by one of the important parts of the settlement the new firm assumed this whole amount at its face value."

It, therefore, appears to be perfectly clear that the allegations of the petition that no allowance was made to the estate of Charles M. Lanahan for his interest in the good-will and trade-marks of the firm, and that the failure or omission to

make such allowance was caused by the fraud of Samuel J. Lanahan and William Lanahan, or either of them, are not supported by the record. On the contrary, it is affirmatively shown that those elements of value were taken into account in the settlement and were allowed for, and that no deception or fraud of any kind was practiced by either Samuel J. or William Lanahan upon anybody.

The record shows that Thomas M. Lanahan was in possession of all the facts touching the interest of Charles M. Lanahan in the firm, including the good-will and trade-marks, and it is shown also that he was not misled or deceived. It is not pretended that the petitioners had any personal knowledge of any fraud in the settlement, and the facts they state in the petition do not tend to support the charge of fraud, but are consistent with the utmost good faith on the part of the persons accused.

There is absolutely nothing in the record before us which would authorize the Court to grant leave to file a bill of review. The application is addressed to the sound discretion of the Court, and, upon the petitioners' own showing, no reason appears why the decree should be reopened. In the case of *The Safe Deposit and Trust Company* v. *Gittings*, 102 Md. 463, JUDGE PEARCE, speaking for the Court, after citing *Hollingsworth* v. *McDonald*, 2 H. & J. 238, and *Burch* v. *Scott*, 1 G. & J. 42, to the effect that an application to file a bill of review is addressed to the sound discretion of the Court, said: "In *Schaeffer* v. *Wunderle*, 154 Ill. 577, the true rule is said to be that unless there has been an abuse of the fair discretionary power with which the Circuit Court has been invested in the matter of such application, its decision should not be disturbed. This rule was adopted in Michigan in *Stockley* v. *Stockley*, 93 Mich. 307, and in *Craig* v. *Smith*, 100 U. S. 226, the Supreme Court said that JUDGE STORY, in *Wood* v. *Mann*, 2 Sumner, 334, stated the rule none too strongly, when he said: 'This discretion was to be exercised cautiously and

sparingly, and only under circumstances which demonstrate it to be indispensable to the merits and justice of the cause.' "

> *Order affirmed with costs to the appellee above and below.*