ELIZABETH H. FRENCH ET AL. *v.* THEODORE JONES ET AL.

[No. 27, January Term, 1936.]

*Decided April 15th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*C. Arthur Eby* and *Emory H. Niles,* for the appellants.

*Harry O. Levin,* with whom was *Sigmund Levin* on the brief, for Theodore Jones and Henry Grob, appellees.

*Simon E. Sobeloff* and *Wilfred T. McQuaid,* submitting on brief, for Yale Merrill and Eli H. Merrill, appellees.

MITCHELL, J., delivered the opinion of the Court.

Some time during the month of August, in the year 1934, Theodore Jones, in company with Henry Grob, both of whom were then about fifteen years of age, found a buried treasure, consisting of a copper container incasing 3,500 gold coins, the greater number of which were $1 pieces; many of them being over 100 years old, and none of them bearing a later date than the year 1856. The face value of the discovered coins was approximately $11,400, and their numismatic value, as disclosed by a public sale, was approximately $20,000. The find was made on

premises known as 132 South Eden Street, in the City
of Baltimore, then and now belonging to Elizabeth H.
French and Mary P. B. Findlay, the appellants in this
case.

At the time of the discovery, Bessie Jones was the
widowed mother of Theodore Jones, and was one of a
number of tenants who rented and occupied apartments
in a dwelling house erected upon the premises. These
tenants used in common a cellar, excavated under a part
of the dwelling, in which separate lockers were placed for
storage purposes for their several uses.

Another portion of the area covered by the dwelling
was only partly excavated, and was not used in connection
with the lockers, the space between the ground and the
floor of the building not being of sufficient depth to permit
a person of average height to walk erectly.

A partition between the area used for the lockers, and
the remaining space under the dwelling, is shown in the
testimony; and the communication between the two areas
was by means of a door. This door, it was contended by
the owners of the premises, was intended to be locked
at all times, and it is their further contention that the
partition marked the dead line between that part of the
cellar intended for, and appropriated to, the use of the
several tenants, and that part not so appropriated. How-
ever, for the purposes of this case, that question is not
now before us.

It is shown that, at the time of the find, Theodore Jones
lived on the premises with his mother, and that Grob
was his comrade and guest. The two boys were digging in
the partly excavated portion of the cellar for the pur-
pose of burying some small coins collected by them from
fellow members of an alleged association to which they
belonged, when the container was located. They took it to
the apartment of Mrs. Jones, where they proceeded to
count its contents and divide their unexpected fortune.
In some way, the news of the discovery found its way to
the police department, and, before the treasure had been
divided between the finders, they were ordered by the

police to surrender the container and its contents to the department. Whether this order was fully complied with is a question upon which subsequent developments cast some doubt. In any event, there is some evidence that at least $185 of the original find was not surrendered to the police; and, as will be later observed, it is contended by the appellants in the instant case that a substantial additional sum, which is claimed to have been later found by the same boys, in the same portion of the cellar and under almost similar circumstances, was clandestinely withheld by them at the time they professed to surrender the full amount of their first discovery.

Be that as it may, the police commissioner of Baltimore City, acting with reference to the sum actually delivered to his department by the finders, promptly filed a bill of interpleader in Circuit Court No. 2 of Baltimore City, for the purpose of establishing the legal owner of the treasure.

Following that action, a number of claimants intervened, and much testimony was taken in behalf of their respective claims. After a lengthy and careful hearing, the chancellor eliminated from consideration all of the several claimants, except (a) those who contended to be the direct representatives of a former owner of the premises upon which the find was made, who, it was claimed, owned and buried the coins; (b) the then and present owners of the property; and (c) the finders. Finally, as between the above remaining claimants, the chancellor, under and by virtue of a decree passed on the 25th day of February, in the year 1935, awarded the impounded coins to the finders.

From that decree an appeal was taken by the two surviving losing claimants, as evidenced by *Foster v. McNabb*, 179 A. 928. At the hearing in this court upon these two appeals, the same being heard together, the eight judges thereof were evenly divided in opinion, and consequently the decree of the chancellor below was affirmed by a *per curiam* order passed on July 22nd, 1935. Promptly a motion for reargument was filed by the contesting owners

of the premises, and that motion, as well as their supplemental motion for reargument, is yet pending in this court.

Omitting the latter motion, such was the status of the former appeal of the appellants in this case, in this court, when, as hereinbefore indicated, a second find of approximately from $8,000 to $10,000 in denominational value of similar gold coins was found by the same boys, in the restricted area beneath the dwelling on the premises, and near the situs of the former find, incased in a separate copper or galvanized container. This latter discovery, according to the testimony, was made on or about the 27th day of May, 1935, and was not known of by the appellants in the instant case until announced in the public press, on or about September 3rd following. It came to public notice because of a complaint lodged with the Baltimore Police Department by Philip Rummel, who had, meanwhile, married the widow Jones, and lived in the same apartment with her, to the effect that the apartment had been burglarized, in his absence, and that the sum of $3,100 in currency and $500 in gold coin had been stolen therefrom. Upon investigation by the department, it was developed that the stolen money represented a part of the alleged second find, and that the coins discovered in the second venture of the boys had been clandestinely divided between them, and held or disposed of by their respective mothers.

Ascertaining this information, the appellants in this case filed in the original interpleader proceedings a petition to be permitted to file a bill of review therein, alleging, among other things, that a part of the coins involved in the second find had been disposed of to sundry persons; and praying that, pending the hearing, the said finders and all persons having possession of additional gold coins or currency arising from the sale thereof be enjoined and restrained from selling or in any manner disposing of the same, pending an investigation by the court. In accordance with the tenor of said petition, the court, on September 17th, 1935, set the same down for hearing on

the 20th of September, and passed an order enjoining the finders, and decreeing that "all persons having possession of the gold coins or the proceeds thereof, found at 132 South Eden Street, Baltimore City, not heretofore disposed of in these proceedings, be and they are hereby enjoined and restrained from selling, transferring or in any manner disposing of said gold coins or the proceeds thereof pending said hearing." At that hearing, testimony was taken in open court, and after full argument, the chancellor by a decree passed on October 8th, 1935, denied the prayer of the petition for authority to file a bill of review, and overruled the motion for such authority; but nevertheless retained jurisdiction over all matters set forth in the petition, and continued the restraining order theretofore passed, until the further order of the court. From the next above decree this appeal is taken.

At the outset, therefore, as is apparent, the only question thereby raised, is the correctness of the ruling of the lower court, in denying the petition for a bill of review, under the facts and circumstances hereinbefore detailed.

We have carefully reviewed the record upon which the chancellor denied the petition for authority to file a bill of review. No witnesses were produced by the appellees, and therefore the testimony consists solely of that of witnesses produced by the appellants, on their own behalf. Without variance in any substantial degree, they established the fact that there was a separate and distinct find of gold coins by the same boys upon the premises of the appellants, on a date subsequent to the passage of the decree with reference to the first find, from which latter decree appeals were, at the time of the second discovery, pending in this court. And while, notwithstanding the testimony of their own witnesses to the contrary, the appellants in their argument before this court strenuously urge that there was but one find, and that the alleged second find was, and is, a part of the original discovery, clandestinely and fraudulently withheld by the finders, there is no affirmative evidence in proof of such

contention. We are therefore of the opinion that the lower court was correct in its determination, and having reached that conclusion, it follows that the decree denying the petition for authority to file a bill of review must be affirmed upon the hypotheses possible to be made on the evidence.

If more gold was found than was stated on the occasion involved in the former appeals, its title would follow the decisions therein. If, on the other hand, more gold was found on a different occasion, such a finding would constitute a different right and liability, to be enforced in a separate action. In either aspect, there would not be sufficient basis for the awarding of a decree for review, the find being either on the same occasion but in a greater amount, or at a different time and of different gold. In the former instance the bill of review would be unavailing, as the subject-matter would be simply greater in value; and in the latter instance, the cause of action would be distinct and in reference to another subject-matter.

In *Miller's Equity Proc.* par. 296, it is said: "In order to file a bill of review, on the ground of newly discovered evidence, the leave of the court must first be obtained, through a petition in the cause in which the decree was passed. The petition must set forth the new matter and be sustained by the affidavit of the petitioner that he did not know of the new matter before the decree was made." And in paragraph 297 of the same authority, it is stated: "The matter relied on must not only be new but such as the party by the use of reasonable diligence could not have known at the time the testimony was taken. * * * This qualification is said to be of equal importance with the rule itself."

One of the early Maryland cases on the subject is that of *Hollingsworth v. McDonald*, 2 H. & J. 230, 238, wherein this court said: "A bill of review will only lie for two causes—Error apparent on the decree, or for some matter relevant, existing at the time of the decree, and discovered since. * * * It cannot be supported for matter existing at the time of the decree, and discovered since, with-

out affidavit of such matter, and the existence of it at the time of the decree, to lay the foundation for applying to the chancellor, for his leave to file a bill of review, and obtaining such leave. On petition suggesting such matter, supported by affidavit as the ground for filing a bill of review, the chancellor exercises his judgment on the propriety of interfering or meddling with his decree, for the cause disclosed, and grants or rejects the application accordingly."

And in the case of *Safe Deposit & Trust Co. v. Gittings,* 102 Md. 456, 463, 62 A. 1030, 1033, 4, after citing *Hollingsworth v. McDonald, supra,* and *Burch v. Scott,* 1 G. & J. 393, to the effect that an application to file a bill of review is addressed to the sound discretion of the court, it is said: "In *Schaefer v. Wunderle,* 154 Ill. 577, 39 N. E. 623, the true rule is said to be that, unless there has been an abuse of the fair discretionary power with which the circuit court has been invested in the matter of such application, its decision should not be disturbed. This rule was adopted in Michigan in *Stockley v. Stockley,* 93 Mich. 307, 53 N. W. 523; and in *Craig v. Smith,* 100 U. S. 226, 25 L. Ed. 577, the Supreme Court said that Judge Story, in *Wood v. Mann,* 2 Sumn. 334, Fed. Cas. No. 17,953 stated the rule none too strongly, when he said: 'This discretion was to be exercised cautiously and sparingly, and only under circumstances which demonstrate it to be indispensable to the merits and justice of the cause.'" *Lanahan v. Lanahan,* 110 Md. 176, 72 A. 672; *Hirons v. Hubbell,* 153 Md. 697, 142 A. 380. Accordingly the decree below will be affirmed.

*Decree affirmed, the costs to be paid by the appellants.*